

**SO ORDERED.**

**SIGNED this 21 day of December, 2006.**

_____
**JAMES D. WALKER, JR.
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF GEORGIA
ATHENS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 7 |
| | ) | CASE NO. 05-31974-JDW |
| ED WALKER, | ) | |
| | ) | |
| DEBTOR. | ) | |

BEFORE

JAMES D. WALKER, JR.

UNITED STATES BANKRUPTCY JUDGE

COUNSEL

For Debtor:    John M. Comolli
　　　　　　　Post Office Box 326
　　　　　　　Athens, Georgia 30603

For Prestige:  Roy E. Manoll, III
　　　　　　　2500 Daniell's Bridge Road
　　　　　　　Building 200, Suite 2A
　　　　　　　Athens, Georgia 30606

## MEMORANDUM OPINION

This matter comes before the Court on Debtor's objection to allowance of claim. This is a core matter within the meaning of 28 U.S.C. § 157(b)(2)(B). After considering the pleadings, the evidence, and the applicable authorities, the Court enters the following findings of fact and conclusions of law in conformance with Federal Rule of Bankruptcy Procedure 7052.

### Undisputed Facts

On or about June 19, 2002, Debtor Ed Walker submitted a Customer Information Sheet to Prestige, Inc. on behalf of Signature Kitchens and Bath, Inc. in his capacity as Signature's president for the purpose of obtaining credit. Debtor attached a Personal Guaranty of Account to the application under which he agreed to guarantee the obligations of Signature to Prestige. Also on that date, Debtor signed an Acknowledgment of Receipt of Conditions of Sale and Terms of Payment, under which the buyer agrees to certain terms and conditions "in consideration of obtaining purchases on credit from Prestige[.]" (Aff. of Lori Boyle, ex. C.) Both the guaranty and the acknowledgment of terms provided the laws of Kansas would apply to any contract between the parties.

In a letter dated July 3, 2002, Lori Boyle (formerly known as Lori Baker), a credit manager for Prestige, notified Debtor that Prestige would not extend credit to Signature, but Prestige would set up an account on C.O.D. (cash on delivery) terms with a 10 percent discount.[1]

About a month later, Signature placed an order with Prestige and paid with a check for

---

[1] The letter stated as follows: "Thank you for applying for credit with us. We have given your request careful consideration, and regret that we are unable to extend credit to you at this time. ... We have set your account up on 10%-COD terms." (Aff. of Lori Boyle, ex. D.)

2

$19,264.53, which represented the price of the shipment less the 10 percent discount. Prestige deposited the check, but it was returned for insufficient funds. Prestige notified Signature of the problem and reversed the discount. Signature made one payment of $800 but made no other payments and made no attempt to return the goods purchased. Prestige advised Debtor that it considered him liable for the debt.

When Debtor filed his Chapter 7 case, Prestige filed a claim for $20,605.03, the amount due on the account, on the basis that Debtor had guaranteed the obligation. Debtor objected to allowance of the claim, contending that the guarantee was unenforceable. The Court held a hearing on the matter on November 14, 2006, and Prestige filed a motion for summary judgment. For the following reasons, the Court will deny Prestige's motion, sustain Debtor's objection, and disallow Prestige's claim.

**Conclusions of Law**

Summary judgment is governed by Federal Rule of Civil Procedure 56, made applicable to contested matters through Federal Rules of Bankruptcy Procedure 9014(c) and 7056. Under Rule 56, a party is entitled to summary judgment when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); McCaleb v. A.O. Smith Corp., 200 F.3d 747, 750 (11th Cir. 2000). Contested matters include litigation on claims objections. In re New River Shipyard, No. 05-20958, 2006 WL 3615455, at *5 (Bankr. S.D. Fla. Dec. 8, 2006); In re Micro-Precision Tech., Inc., 303 B.R. 238, 243 (Bankr. D.N.H. 2003).

The parties in this case have agreed on the facts. The only question is whether Debtor is liable as a guarantor for the debt to Prestige incurred by Signature. The answer lies in the terms of the agreement among the three parties. Prestige argues the guarantee is a term; Debtor argues it is not.

The Court must first decide whether to apply Georgia or Kansas contract law. The guarantee contains a provision stating, "All rights and obligations, hereunder shall be governed by the laws of the State of Kansas ..." The list of terms and conditions contains a provision stating, "The laws of the State of Kansas shall govern all contracts entered into between Applicant and Prestige, Inc. ..." Generally, Georgia courts will honor a choice of law provision unless it contravenes Georgia public policy or prejudices the interests of Georgia. Convergys Corp. v. Keener, 276 Ga. 808, 810, 582 S.E.2d 84, 85-6 (Ga. 2003). However, the parties here have stipulated that there are no significant distinctions between Georgia and Kansas law on the issues in dispute, and the parties have cited to Georgia law in their arguments. In such circumstances, "the choice of law provision[s] have been modified by the parties' mutual departure from the contract terms," and the Court will apply Georgia law. Rohm & Hass Co. v. Gainsville Paint & Supply Co., 225 Ga. App. 441, 443 n.3, 483 S.E.2d 888, 891 n.3 (1997).

An essential element of a contract is mutual assent to its terms. O.C.G.A. § 13-3-1 (1982). When a party makes an offer, acceptance of the offer "must be unconditional, unequivocal, and without variance of any sort, otherwise there can be no meeting of minds and mutual asset necessary to formation of a contract." Panfel v. Boyd, 187 Ga. App. 639, 645-46, 371 S.E. 2d 222, 228 (1988).

Prestige argues Debtor's personal guarantee was the subject of mutual assent among the

4

parties. Signature applied for a customer account subject to any credit terms approved by Prestige, and Debtor guaranteed the account. Prestige offered C.O.D. terms, which Signature accepted by placing an order. Because Debtor guaranteed the customer account, he is liable for the balance due.

Debtor argues that he offered his personal guarantee as part of a credit application. Prestige denied credit by offering an account on C.O.D. terms, without any reference to a guarantee. Therefore, when Signature placed an order, it was accepting the new offer of C.O.D. terms without Debtor's guarantee.

To determine which party is correct, the Court must look to the four corners of the relevant documents. Debtor initially submitted a package of three documents to Prestige. Prestige responded with a single letter.

The first document in Debtor's package is the Customer Information Sheet ("CSI"). The CSI reports basic information about Signature, including address, phone number, nature of business, years in business, and information about the owner. It also requires a bank reference, trade references, and authorization to obtain credit reports and other information "that may be used to determine credit worthiness." At the end of the document, following the word "notice" written three times in capital letters and a large font, the CSI states, "To insure that your credit is approved in a timely manner, check to see that all information supplied is correct and all blanks are complete. ... Original credit application must follow by mail .... Approval will not take place till [sic] original has been received."

The second document supplied by Debtor is the Personal Guaranty of Account ("PGA"). The first paragraph of the guarantee reads, "For valuable consideration, the receipt and

sufficiency of which is hereby acknowledged, and to induce Prestige, Inc. ... to make advances or loans or otherwise to give credit to the applicant .... [t]he undersigned ... hereby personally and unconditionally guarantee(s) due and punctual payment to Seller ...." The PGA further states, "This is a continuing guaranty and shall cover and apply to all transactions entered into by the Buyer ...."

The third document signed by Debtor is the Acknowledgement [sic] of Receipt of Conditions of Sale and Terms of Payment ("Terms"). The first sentence of the Terms states, "BUYER, in consideration of obtaining purchases on credit from Prestige, Inc. (Seller) does hereby agree to the following terms and conditions[.]" The sentence is followed by 16 terms, including number 8, which provides, "The annexed credit application and personal guarantee are made for the purpose of obtaining credit ...."

Looking at the three documents together, the Court is persuaded they comprised an application for credit, not an application for a customer account. Furthermore, Debtor offered the guarantee as part of the request for credit, not as part of a request to establish a customer account. No references are made in any of the documents to a customer account. Instead, all references in the CSI are to a credit application, creditworthiness, and approving credit. In addition, the guarantee states that it is offered to induce Prestige to extend credit. Finally, the Terms state that they apply to purchases on credit and that the credit application and guarantee were made to obtain credit. Consequently, the Court concludes Debtor offered to personally guarantee any credit extended by Prestige to Signature.

Signature replied to Debtor's offer by letter. The letter provides, "Thank you for applying for credit with us. We have given your request careful consideration, and regret that we are

6

unable to extend credit to you at this time." The letter closes with the statement, "We have set your account up on 10%-COD terms." The letter makes no mention of a guarantee. Instead, it expressly rejects the essential subject matter of Debtor and Signature's offer–the extension of credit. Thus, the letter constitutes a counteroffer, which "operates to reject an offer and to terminate the power of acceptance." Lamb v. Decatur Fed. Sav. & Loan Ass'n, 201 Ga. App. 583, 585, 411 S.E.2d 527, 529 (Ga. App. 1991). The only term given in the counteroffer is C.O.D. The letter is devoid of any stated intention to incorporate the guarantee as part of the new offer. Signature accepted the counteroffer by placing an order and paying by (worthless) check at the time of delivery.

Prestige has argued that, in conformance with its customary and normal business practice, it did not require advance payment from Signature before fulfilling Signature's order solely because Debtor had guaranteed Signature's obligations. While that may be true, it is not sufficient to overcome the language contained in documents discussed above. Furthermore, Prestige has offered no evidence that Debtor was aware of this policy other than a hearsay statement in the supplemental affidavit of Ms. Boyle that the sales representative would have explained it to Signature.

For the foregoing reasons, the Court finds that Debtor's personal guarantee of obligations owed by Signature to Prestige was not a part of the agreement of the parties. Therefore, Debtor is not liable for the debt owed by Signature to Prestige. Prestige's motion for summary judgment will be denied, and Debtor's objection to Prestige's claim will be sustained.

An Order in accordance with this Opinion will be entered on this date.

END OF DOCUMENT